9998-2733618

## ORIGINAL

IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

FILED

AUG 1 7 2015

U.S. COURT OF
FEDERAL CLAIMS

15 - 889 T

| | |
|---|---|
| FRITZ RUDOLF AND CLAUDINE KUNDRUN<br>15563 Estancia Lane<br>Wellington, FL 33414 | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )  Civil Action No. _____<br>) |
| THE UNITED STATES OF AMERICA, | )<br>)<br>) |
| Defendant. | )<br>) |

## COMPLAINT

Fritz Rudolf Kundrun and Claudine Kundrun (collectively, the "Kundruns" or "Plaintiffs") hereby commence this action for refund of $7,890,901, which includes (i) refund of $4,566,783 for the taxable year beginning January 1, 2007 and ending December 31, 2007 ("2007"), (ii) refund of $2,783,802 for the taxable year beginning January 1, 2008 and ending December 31, 2008 ("2008"), and (iii) refund of $540,316 for the taxable year beginning January 1, 2009 and ending December 31, 2009 ("2009"), from the Internal Revenue Service ("IRS"). In support of this action, the Kundruns allege as follows:

## PARTIES

1.    The Kundruns are U.S. taxpayers who reside at 15563 Estancia Lane, Wellington, Florida 33414-7439. Mr. Kundrun's Social Security number is XXX-XX-XXXX. Mrs. Kundrun's Social Security number is XXX-XX-XXXX.

2.    Defendant is the United States of America.

## JURISDICTION

3. This action is brought to recover overpayments of Federal income tax arising under the Internal Revenue Code of 1986, as amended (the "Code"), Title 26, United States Code.

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1346(a)(1) and 1491.

5. On or about October 15, 2008, the Kundruns filed jointly a Form 1040, U.S. Individual Income Tax Return ("Form 1040"), for 2007 (the "2007 Return").

6. On or about September 30, 2009, the Kundruns filed jointly a Form 1040 for 2008 (the "2008 Return").

7. On or about October 14, 2010, the Kundruns filed jointly a Form 1040 for 2009 (the "2009 Return").

8. On or about October 14, 2011, the Kundruns filed a Form 1040-X, Amended U.S. Individual Income Tax Return ("Amended Return"), claiming a refund for overpayment of tax for 2007 (the "First 2007 Amended Return"). A true and accurate copy of the First 2007 Amended Return is attached as Exhibit A.

9. On or about December 1, 2011, the Kundruns filed an Amended Return claiming a refund for overpayment of tax for 2008 (the "First 2008 Amended Return"). A true and accurate copy of the First 2008 Amended Return is attached as Exhibit B.

10. On or about December 1, 2011, the Kundruns filed an Amended Return claiming a refund for overpayment of tax for 2009 (the "First 2009 Amended Return"). A true and accurate copy of the First 2009 Amended Return is attached as Exhibit C.

11.     On or about July 24, 2014, the Kundruns filed a second Amended Return for 2007 to make additional adjustments (the "Second 2007 Amended Return").  A true and accurate copy of the Second 2007 Amended Return is attached as Exhibit D.

12.     On or about July 25, 2014, the Kundruns filed a second Amended Return for 2008 to make additional adjustments (the "Second 2008 Amended Return").  A true and accurate copy of the Second 2008 Amended Return is attached as Exhibit E.

13.     On or about July 24, 2014, the Kundruns filed a second Amended Return for 2009 to make additional adjustments (the "Second 2009 Amended Return").  A true and accurate copy of the Second 2009 Amended Return is attached as Exhibit F.

14.     The Kundruns paid the full amount of tax owed for each of 2007, 2008, and 2009.

15.     The IRS disallowed the Kundruns' refund claim for each of 2007 and 2008 in a notice dated August 29, 2013.  A true and accurate copy of the refund claim disallowance is attached as Exhibit G.

16.     To date, the IRS has not issued a notice disallowing the refund claimed for 2009, but has yet to issue the refund for such year.

17.     The prerequisites to the suit in section 6532[1] and section 7422 are satisfied.

## FACTS SUPPORTING CLAIMS FOR RELIEF

### Changes to the 2007 Return and 2008 Return Due to the E&P Study

18.     In 2007 and 2008, Mr. Kundrun held a 50% interest in each of AMCI Investments Pty Ltd ("Pty") and AMCI International AG ("AG").

---

[1]     Unless otherwise indicated, all "section" or "Code" references are to the Internal Revenue Code of 1986, as amended, and all "Treasury Regulation" or "Treas. Reg." references are to the Treasury Regulations issued under the Code.

19.     AG and Pty were each controlled foreign corporations ("CFCs") under section 957 for U.S. Federal income tax purposes during 2007 and 2008.

20.     Pursuant to section 951, the 2007 Return and the 2008 Return each included subpart F income (the "Subpart F Income Inclusion") and income arising from earnings invested in U.S. property under section 956 (the "Section 956 Income Inclusion"), with respect to each of AG and Pty.

21.     After the filing of the 2009 Return, an earnings and profits ("E&P") study for the years 2000 to 2009 (the "E&P Study") provided updated and revised financial data for each of AG, Pty, and certain other entities.  The E&P Study was not available at the time the 2007 Return, the 2008 Return, and the 2009 Return were originally filed.

22.     The E&P Study reflected the updated E&P of each of Pty and AG for each of 2007 and 2008 and the appropriate sourcing and treatment of certain foreign source income for those years, which in turn impacted the Subpart F Income Inclusion, the Section 956 Income Inclusion, itemized deductions, and the amount of foreign tax credits utilized in each year.

23.     In light of the updated information provided in the E&P Study, on or about October 14, 2011, the Kundruns filed the First 2007 Amended Return, and attached corrected Forms 5471, Information Return of U.S. Persons With Respect to Certain Foreign Corporations ("Form 5471"), with respect to each of Pty and AG for 2007.  See Ex. A.

24.     The originally-filed Form 5471 with respect to Pty for 2007 did not report income inclusive of wholly-owned disregarded entities below it.  The corrected Form 5471 with respect to Pty for 2007 reported E&P of AUD 34,712,313, which resulted in a corrected Subpart F Income Inclusion of $23,319,056, generated from interest and dividend income.

25.     The Kundruns reported on the First 2007 Amended Return a corrected Subpart F Income Inclusion of $11,659,528 (based upon Mr. Kundrun's 50% ownership percentage of Pty).

26.     The originally-filed Form 5471 with respect to AG for 2007 incorrectly reported current year E&P of $53,951,622. This amount incorrectly included a $45,854,351 non-taxable gain from a reorganization of a foreign partnership, 40.8% of which was indirectly owned by AG.

27.     The corrected Form 5471 with respect to AG for 2007 reported current year E&P related to AG of $7,791,074.

28.     Based on further review of AG's financials, it was determined that certain interest and non-qualified dividends income included as part of the Subpart F Income Inclusion on the 2007 Return should not have been considered subpart F income due to the "look through rules" under section 954(c)(6) and interest netting rules under section 954(b)(5).

29.     The First 2007 Amended Return corrected the Section 956 Income Inclusion with respect to AG to $2,087,240 (based upon Mr. Kundrun's 50% ownership percentage of AG).

30.     During 2007, the Kundruns held additional investments within an Australian Grantor Trust.

31.     In 2007, the Australian Grantor Trust erroneously reported dividend income from a publicly-traded Australian company, which caused the Kundruns to report $776,713 in subpart F income on the 2007 Return. The First 2007 Amended Return recharacterized this amount as dividend income because the Australian Grantor Trust is a transparent foreign grantor trust whose income (and character of the income) flows through to the taxpayer.

32.     The corrected information on the First 2007 Amended Return related to the Subpart F Income Inclusion and Section 956 Income Inclusion decreased taxable subpart F income by $10,824,222 and increased foreign source income by $14,061,836. These adjustments increased the foreign tax credit limitation, which thus increased the amount of foreign tax credits utilized by $1,842,563. This credit included a carryover amount from 2006. The adjustments also increased the amount of itemized deductions by $216,484.

33.     The First 2007 Amended Return resulted in a net $12,493,328 tax liability and a net refund of $5,722,451 for 2007.

34.     On or about December 1, 2011, the Kundruns filed the First 2008 Amended Return and attached corrected Forms 5471 with respect to each of Pty and AG for 2008. See Ex. B.

35.     The originally-filed Form 5471 with respect to Pty for 2008 reported a book loss net of mark-to-market adjustments and mistakenly excluded income from disregarded entities within the group and income from foreign partnerships, and incorrectly reduced E&P for intercompany loan write-downs which were not realized and thus should not have been items of loss that reduced E&P.

36.     The mark-to-market adjustment had no impact on Pty's E&P; however, the inclusion of the disregarded entities, partnerships, and disallowance of the intercompany loan write-down increased Pty's current year E&P for 2008 by AUD 13,912,382.

37.     The corrected Form 5471 with respect to Pty for 2008 reflected current year E&P of AUD 14,669,430.

38.     The adjustment to Pty's E&P resulted in $25,834,377 of potential subpart F income for 2008.  But, because of the current year E&P limitation under section 952(c), the inclusion was limited to $14,669,430.

39.     On the First 2008 Amended Return, the Kundruns reported a corrected Subpart F Income Inclusion with respect to Pty for 2008 of $7,334,715 (based upon Mr. Kundrun's 50% ownership percentage of Pty).

40.     The corrected Form 5471 with respect to AG for 2008 reported current year E&P of $16,316,000.

41.     AG generated a potential Subpart F Income Inclusion for 2008 of $19,823,010, but due to the current year E&P limitation under section 952(c), the inclusion was limited to $16,316,000.  Based on Mr. Kundrun's 50% ownership of AG, the Kundruns reported $8,158,000 on the First 2008 Amended Return as their portion of the Subpart F Income Inclusion with respect to AG for 2008.

42.     The Kundruns also reported on the First 2008 Amended Return a Section 956 Income Inclusion for AG of $6,377,160 (based on Mr. Kundrun's 50% ownership of AG).

43.     The corrections made in the First 2008 Amended Return to the Subpart F Income Inclusion and Section 956 Income Inclusion decreased taxable subpart F income by $8,391,674 and increased foreign source income by $14,593,573.  These adjustments increased the foreign tax credit limitation and resulted in a $112,452 increase in utilized foreign tax credits.  The adjustments also decreased income related to partnerships and S-corporations by $61,686 and increased the amount of itemized deductions by $253,601.

44.     The First 2008 Amended Return resulted in a net tax liability of $9,582,336 and a net refund of $3,159,888 for 2008.

7

**The First 2009 Amended Return, Audit, and No Change Letter**

45.     On or about December 1, 2011, the Kundruns filed via hand delivery the First 2009 Amended Return to reflect the updated and revised financial data and analysis provided by the E&P Study.  See Ex. C.

46.     The First 2009 Amended Return resulted in a $1,859,785 net tax liability and a net refund of $1,128,563 for 2009.

47.     On or about May 4, 2012, the IRS commenced an examination of the First 2009 Amended Return (the "2009 Audit").

48.     As part of the 2009 Audit, the IRS issued 12 information document requests to which the Kundruns provided complete and timely responses.

49.     On or about May 22, 2013, the IRS issued a letter to the Kundruns stating that it had completed an examination of 2009 and did not propose any changes to the reported tax (the "No Change Letter").  A true and accurate copy of the No Change Letter is attached as Exhibit H.

50.     Notwithstanding the IRS's thorough examination of the First 2009 Amended Return and the No Change Letter, as of August 12, 2015 the IRS claims it does not have any record of the First 2009 Amended Return or its examination of that return, and has not paid the Kundrun's the $1,128,563 refund claimed on the First 2009 Amended Return.

**Changes to 2007 Return, 2008 Return, and 2009 Return Due to OVDI**

51.     On or about September 26, 2013, Mr. Kundrun requested pre-clearance under the 2012 IRS Offshore Voluntary Disclosure Initiative ("OVDI") in connection with undisclosed income from offshore accounts.

52.     On or about November 6, 2013, the IRS sent Mr. Kundrun a preliminary acceptance letter into OVDI.

53.     Mr. Kundrun's participation in OVDI was prior to the processing of the First 2007 Amended Return, the First 2008 Amended Return, and the First 2009 Amended Return.

54.     On or about July 24, 2014, the Kundruns filed the Second 2007 Amended Return to report additional foreign income as part of Mr. Kundrun's participation in OVDI. See Ex. D.

55.     The Second 2007 Amended Return also reflected the corrective adjustments reflected in the First 2007 Amended Return.

56.     As compared to the First 2007 Amended Return, the Second 2007 Amended Return reported a $1,381,252 increase in foreign income, which included $67,136 in interest, $490,169 in dividends, and $823,947 in other income.

57.     The increase in foreign income also resulted in a $27,624 decrease in itemized deductions and a $662,562 decrease in foreign tax credit carryover into 2007.

58.     The Second 2007 Amended Return resulted in a net tax liability of $13,648,996 and net refund of $4,566,783 for 2007, which took into account the refund claimed in the First 2007 Amended Return.

59.     To date, the Kundruns have not been issued the refund claimed for 2007.

60.     On or about July 25, 2014, the Kundruns filed the Second 2008 Amended Return to report additional foreign income as part of Mr. Kundrun's participation in OVDI. See Ex. E.

61.     The Second 2008 Amended Return also reflected the corrective adjustments in the First 2008 Amended Return.

62.     As compared to the First 2008 Amended Return, the Second 2008 Amended Return reported a $1,056,276 increase in foreign income, which included $46,342 in interest, $258,398 in dividends, and $751,536 in other income.

63.     The increase in foreign income resulted in an $18,768 decrease in itemized deductions and a $13 increase in utilized foreign tax credits.

64.     The Second 2008 Amended Return resulted in a net tax liability of $9,958,422 and net refund of $2,783,802 for 2008, which took into account the refund claimed in the First 2008 Amended Return.

65.     To date, the Kundruns have not been issued the refund claimed for 2008.

66.     The IRS disallowed the Kundruns' refund claims for 2007 and 2008 in a notice dated August 29, 2013.  See Ex. G.

67.     On or about July 24, 2014, the Kundruns filed the Second 2009 Amended Return to report additional foreign income as part of Mr. Kundrun's participation in OVDI.  See Ex. F.

68.     The Second 2009 Amended Return also reflected the corrective adjustments in the First 2009 Amended Return.

69.     As compared to the First 2009 Amended Return, the Second 2009 Amended Return reported a $1,683,309 increase in foreign income, which included $28,003 in interest, $608 in dividends, and $1,654,699 in other income.

70.     The increase in foreign income resulted in a $16,833 decrease in itemized deductions and a $6,681 increase in utilized foreign tax credits.

71.     The Second 2009 Amended Return resulted in a net tax liability of $2,448,032 and net refund of $540,316 for 2009, which took into account the refund claimed in the Second 2009 Amended Return.

10

72.     To date, while the IRS has not issued the refund claimed for 2009, it also has not issued a notice disallowing the claim.

## COUNT I

### 2007 Refund

73.     The allegations set forth in paragraphs 1 through 72 above are incorporated by reference in this Count I.

74.     The Kundruns made a full payment of tax, penalties, and interest for 2007.  See 28 U.S.C. § 1346(a)(1); Flora v. United States, 362 U.S. 145, 150, 177 (1960); DiNatale v. United States, 12 Cl. Ct. 72, 73-74 (Cl. Ct. 1987).

75.     The Second 2007 Amended Return correctly reflects the tax owed by the Kundruns for 2007 pursuant to the Code.

76.     The Kundruns's claim for refund for 2007 was made in proper form.  See Treas. Reg. § 301.6402-3(a)(2).

77.     The First 2007 Amended Return and Second 2007 Amended Return were timely filed refund claims under section 6511.

78.     This action is timely commenced within the applicable period of limitations under section 6532(a).

79.     The Second 2007 Amended Return resulted in an overpayment of tax for 2007 in the amount of $4,566,783.  The Kundruns demand a refund of this amount.

## COUNT II

### 2008 Refund

80.     The allegations set forth in paragraphs 1 through 72 above are incorporated by reference in this Count II.

81.     The Kundruns made a full payment of tax, penalties, and interest for 2008.  See 28 U.S.C. § 1346(a)(1); Flora v. United States, 362 U.S. 145, 150, 177 (1960); DiNatale v. United States, 12 Cl. Ct. 72, 73-74 (Cl. Ct. 1987).

82.     The Second 2008 Amended Return correctly reflects the tax owed by the Kundruns for 2008 pursuant to the Code.

83.     The Kundruns's claim for refund for 2008 was made in proper form pursuant to Treas. Reg. § 301.6402-3(a)(2).

84.     The First 2008 Amended Return and Second 2008 Amended Return were timely filed refund claims under section 6511.

85.     This action is timely commenced within the applicable period of limitations under section 6532(a).

86.     The Second 2008 Amended Return resulted in an overpayment of tax for 2008 in the amount of $2,783,802.  The Kundruns demand a refund of this amount.

### 2009 Refund

87.     The allegations set forth in paragraphs 1 through 72 above are incorporated by reference in this Count II.

88.     The Kundruns made a full payment of tax, penalties, and interest for 2009.  See 28 U.S.C. § 1346(a)(1); Flora v. United States, 362 U.S. 145, 150, 177 (1960); DiNatale v. United States, 12 Cl. Ct. 72, 73-74 (Cl. Ct. 1987).

89.     The Second 2009 Amended Return correctly reflects the tax owed by the Kundruns for 2009 pursuant to the Code.

90.     The Kundruns's claim for refund for 2009 was made in proper form pursuant to Treas. Reg. § 301.6402-3(a)(2).

91.     The First 2009 Amended Return and Second 2009 Amended Return were timely filed refund claims under section 6511.

92.     This action is timely commenced within the applicable period of limitations under section 6532(a).

93.     The Second 2009 Amended Return resulted in an overpayment of tax for 2009 in the amount of $540,316.  The Kundruns demand a refund of this amount.

### PRAYER FOR RELIEF

WHEREFORE, the Kundruns pray that the requirements for satisfaction of a refund claim of $7,890,901, or such greater amount as is properly refundable, be determined and held satisfied, that judgment be entered on the claims asserted, and that the Court grant such other and further relief as it may deem proper.

Respectfully submitted,


/s/ George M. Clarke III
George M. Clarke III
Attorney of Record
george.clarke@bakermckenzie.com

Parisa J. Manteghi
Of Counsel
parisa.manteghi@bakermckenzie.com

Baker & McKenzie LLP
815 Connecticut Avenue, N.W.
Washington, DC  20006
Tel:     (202) 452-7000
Fax:    (202) 452-7074


Attorneys for Plaintiffs,
       Fritz Rudolf and Claudine Kundrun

Dated:  August 17, 2015